Elaine B. OSMUN,
Petitioner/Respondent,

v.

Thomas M. OSMUN,
Respondent/Appellant.

No. 61306.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 15, 1992.

Michael C. Todt, Charles P. Todt & Associates, St. Louis, for respondent/appellant.

Marjorie K. Carter, Susan K. Roach, Roussin & Roach, Chesterfield, for petitioner/respondent.

AHRENS, Judge.

Husband challenges the maintenance and child custody provisions of the decree dissolving his marriage to wife. We affirm.

Husband and wife were married on January 29, 1969. Eight children were born of the marriage; one male child, Paul, was emancipated at the time of trial. The parties stipulated that four of the female children remain in wife's primary custody: Angela, Diane, Deborah, and Kathryn, ages 16, 11, 7, and 4, respectively. At trial, wife also sought custody of the two unemancipated male children: James and David, who were then ages 15 and 12. Husband sought primary custody of James, David, and the remaining female child, Michelle, who was 19 years of age.

The record reflects that husband at the time of trial was an experienced dentist earning a gross monthly income of $11,662. In contrast, wife did not work outside the home since working as a key punch operator for a short time early in the marriage. Husband's estimated monthly expenses average $5,758. Wife in her statement of income and expenses listed $5,954 in average monthly expenses but testified at trial that her expenses average approximately $7,600 per month.

At trial, wife alleged various misconduct on the part of husband, including two "affairs" and verbal and physical abuse. Further, the trial court heard testimony with respect to each party's spousal and parental roles and the value of the parties' marital property, including husband's dental practice and the parties' two residences.

In its decree of dissolution entered October 23, 1991, the trial court awarded husband custody of James and Michelle and awarded wife custody of Angela, David, Diane, Deborah, and Kathryn. Wife was awarded $2,175 per month for support of those children in her custody and $2,500 per month in maintenance.

In disposing of the parties' marital property, the court awarded wife a residence valued at $130,000, several automobiles, one-half husband's pension account, and all bank accounts listed in wife's name. Husband was awarded a residence valued at $90,000, his dental practice valued at $110,000, an automobile, a tractor, one-half his pension account, and all bank accounts listed in his name. Each party was awarded the furniture and furnishings contained in the residence awarded him or her. Lastly, the court ordered husband to pay $15,000 toward wife's attorney's fees and $35,000 to wife as a portion of the dental practice's value.

On appeal, husband contends the trial court erred in its determinations of custody and maintenance. We will affirm the court's decree if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Williams v. Williams*, 753 S.W.2d 101, 102 (Mo.App.1988). Further, we will set the decree aside as "against the weight of the evidence" only with caution and a firm belief it is clearly wrong. *Id.*

In point one, husband contends the trial court erred in awarding wife primary custody of David. First, husband argues the

court erred in failing to appoint a guardian ad litem, since wife at trial alleged husband had abused or neglected the child.

Section 452.423.1 RSMo (Supp. 1991) provides that a court "shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged." The mandatory duty of such appointment arises when abuse is alleged in the motions or pleadings, or when evidence of abuse or neglect surfaces in the proceeding itself. *Van Pelt v. Van Pelt*, 824 S.W.2d 135, 139 (Mo.App.1992). Even if not requested by the parties, it is error not to appoint a guardian ad litem if such an appointment is warranted. *McCormick v. McCormick*, 807 S.W.2d 556, 557 (Mo.App.1991).

None of the motions or pleadings in the case contain any allegations of abuse or neglect. During direct examination at trial, wife expressed concern with respect to the beliefs husband was instilling in the children and the manner in which one child, James, treated her when husband was present. Further, wife testified husband left James unsupervised, without the type of "foods that children enjoy eating," and without "appropriate" clothing. Wife also stated James needed eyeglasses and had not received medication or medical attention for severe colds and eye infections he had suffered. Lastly, wife testified husband belittled and criticized James, and disciplined him harshly using physical force. When asked to state her "concerns" in the event the court were to award husband primary custody of David, wife stated she would have the same concerns she felt with respect to husband's care of James.

Husband contends wife's testimony constitutes evidence of abuse or neglect that required the trial court to appoint a guardian ad litem to represent David. Although the terms "abuse" and "neglect" are not defined in chapter 452, we are guided by the definitions of those terms in chapter 210, the chapter governing child protection and reformation. *See Renfro v. Fehrmann*, 817 S.W.2d 592, 593 (Mo.App. 1991). As defined in that chapter, "abuse"

means "any physical injury, sexual abuse, or emotional abuse ... except that discipline including spanking, administered in a reasonable manner shall not be construed to be abuse[.]" § 210.110(1) RSMo 1986. Similarly, "neglect" is defined as "failure to provide ... the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for [the child's] well-being[.]" § 210.110(5) RSMo 1986.

In our view, the record does not suggest evidence of David's abuse or neglect. As presented by wife, husband's alleged criticism and belittling of the children was not so severe as to constitute emotional abuse, and nothing indicates husband's discipline of James was administered in an unreasonable manner. Further, the testimony does not indicate husband failed to provide any nutrition or medical care necessary to the children's well-being.[1] Nothing in the evidence revealed a situation from which the trial court should have found abuse or neglect and appointed a guardian ad litem to represent David's interests. Further, "a parent may not protest the non-appointment of a guardian under § 452.423.1 on the basis that the parent's interests were harmed, when no harm to the child is shown." *Van Pelt*, 824 S.W.2d at 139. In this case, there has been no showing that David was harmed.

Next, husband argues the trial court erred in refusing to conduct an in-camera interview of David in the presence of counsel to determine which parent David wished to be his primary custodian.

The court began to interview David in chambers without counsel present. The judge asked David his age, but halted the interview when the court clerk indicated counsel wished to make a record that they should be present. At that time, the judge refused to proceed with the interview, indicating, "I don't hear children in chambers unless I hear them—certainly at their age—alone. I don't want any parent retal-

---

1. In her brief to this court, wife characterizes her testimony as citing "basic differences in parenting styles" and "simply voicing her opinion regarding child rearing preferences."

iating against the kid and that kind of business."

It is true, as husband argues, that a court in making its custody determination must consider the wishes of a child as to his or her custodian. § 452.375.2(2) RSMo (Supp.1991). However, the decision whether to ascertain such wishes through an in-chambers interview of the child is discretionary with the trial court. *Hord v. Morgan,* 769 S.W.2d 443, 448 (Mo.App.1989); § 452.385 RSMo 1986. Once the court elects to conduct the interview, it must permit counsel to be present and cause a record of the interview to be made. *Plunkett v. Plunkett,* 757 S.W.2d 286, 288 (Mo.App.1988); § 452.385 RSMo 1986. "[I]f the court makes no such election, then the statute has no application." *Duncan v. Duncan,* 528 S.W.2d 806, 809 (Mo.App. 1975).

Husband argues the trial court violated § 452.385 by refusing to permit counsel's presence during David's interview. However, the decision at issue herein is the trial court's election to forego the interview altogether. This election is a matter for the court's discretion, *Hord* 769 S.W.2d at 448, and we find no abuse thereof. Nothing in the record indicates husband requested that David be interviewed by the court. *See Vaught v. Vaught,* 755 S.W.2d 375, 377 (Mo.App.1988). Further, the record before the trial court contained evidence of David's wishes as to his custodian, even though he was not interviewed with respect to that preference pursuant to § 452.385.[2] Nothing indicates the court failed to consider David's wishes and preference, along with other relevant factors, in making its determination of custody.

In his final subpoint under point one, husband contends the trial court's awarding wife primary custody of David was arbitrary and against the weight of the evidence, because husband was a "caring, loving, provider and was desirous of having custody of his son and son was desirous of

living with [husband]." Husband further cites the general rule that children of divorced parents should not be separated, *Vaught,* 755 S.W.2d at 376, and speculates that the court may have impermissibly based its determination of custody on the ages and/or genders of the children. *See Komosa v. Komosa,* 776 S.W.2d 424, 427 (Mo.App.1989).

As wife notes in her brief, husband in making his argument fails to mention the parties' stipulation with respect to the custody of all the unemancipated children except David. Further, husband ignores our standard of review with respect to the trial court's custody determination. We will affirm the court's decision "unless firmly convinced the welfare of the child requires some other disposition." *D.S.P. v. R.E.P.,* 800 S.W.2d 766, 769 (Mo.App.1990). The primary consideration in determining custody is the best interests of the child. *Petty v. Petty,* 760 S.W.2d 555, 556 (Mo. App.1988); § 452.375.2 RSMo (Supp.1991).

Husband appears to argue that his fitness as a parent entitles him to custody of David. However, fitness does not mandate an award of custody, and one parent does not have to prove the other unfit in order to be awarded custody. *D.K.L. v. L.C.L.,* 764 S.W.2d 664, 666 (Mo. App.1988). Nothing in the record indicates the award was not in David's best interests, and we are not convinced his welfare requires a different disposition. Point one is denied.

In his second point, husband challenges the amount of maintenance awarded wife. In making this argument, however, husband again ignores our standard of review.

Because the determination of the amount of maintenance is discretionary with the trial court, we review the decision only for an abuse of that discretion. *Franke v. Franke,* 747 S.W.2d 202, 203 (Mo.App.1988). Further, as the party challenging the award, husband bears the bur-

---

2. The court ordered the parties to enroll all their children in individual counseling with a psychologist, Anne Duncan. Ms. Duncan's psychological summary of the family was filed with the trial court and made a part of the record on appeal. In her psychological summary of David, Ms. Duncan reported that he stated a preference for living with husband.

den of demonstrating it is so excessive as to constitute such an abuse. *Williams*, 753 S.W.2d at 102. "To warrant a change on appeal, the amount of maintenance must be unwarranted and wholly beyond the means of the spouse who pays." *Cooper v. Cooper*, 778 S.W.2d 694, 698 (Mo.App. 1989).

 In its decree of dissolution, the trial court awarded wife $2,500 per month in modifiable maintenance, payable until wife's or husband's death or wife's remarriage. In arguing the trial court erred in making its award, husband cites the difference between the amount of maintenance the court awarded wife at the time of the pendente lite hearing and the amount wife requested at trial and was awarded in the decree. However, a motion pendente lite is a separate and distinct proceeding in no way dependent upon the merits of the issues in the underlying dissolution action, and the evidence may be sufficient to support the determination in one proceeding although the determination is different from that reached in the other. *Wilson v. Wilson*, 822 S.W.2d 917, 925 (Mo.App. 1991).

Next, husband argues the maintenance award need not be sufficient to provide a spouse with the standard of living established during the marriage, citing *Bidstrup v. Bidstrup*, 750 S.W.2d 712, 713 (Mo.App.1988). Nevertheless, the standard of living established during the marriage is a factor relevant to the maintenance determination, § 452.335.2(4) RSMo (Supp.1991), and nothing in the record indicates the trial court placed undue emphasis on this factor. Further, nothing indicates, as husband suggests, that the trial court awarded wife higher maintenance in lieu of child support.

Lastly, husband argues the maintenance award was unduly burdensome, in that he was awarded custody of two of the parties' children and is paying the college tuition for one of them. Further, husband contends the award was against the weight of the evidence in light of the testimony that his dental practice was in financial decline.

With respect to these contentions, we need only state that nothing in the record indicates the trial court failed to consider the statutory factors relevant to the determination of maintenance, including husband's ability to meet his needs while meeting those of wife. *See* § 452.335.2 RSMo (Supp.1991). Further, the court had the prerogative to determine the credibility of the witnesses and was free to accept or reject all, part, or none of the testimony. *Franke*, 747 S.W.2d at 203. We find no abuse of discretion in the court's maintenance determination. Point two is denied.

The judgment of the trial court is affirmed.

CRIST and REINHARD, JJ., concur.