**Michael David FLIEG, Petitioner–Appellant,**

v.

**Cheryl Lynn FLIEG, Respondent–Respondent.**

No. 64746.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 23, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 1994.

Application to Transfer Denied
Oct. 25, 1994.

Bruce Hilton, St. Louis, Lawrence G. Gillespie, Webster Groves, for appellant.

J. Michael Ford, Clayton, Lawrence Wittels, David Richard Bohm, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Michael David Flieg ("husband"), appeals from a final order entered in

the Circuit Court of the City of St. Louis granting legal custody and primary physical custody of the parties' minor child to Respondent, Cheryl Lynn Flieg ("wife"). We affirm.

The parties were married on February 28th, 1988, and separated on February 21, 1992. One child, M.F., was born of the marriage. Wife maintained primary custody of M.F. during the 16 month separation. At the time of the dissolution hearing, husband and wife stipulated the only issue to be determined by the trial court was the physical and legal custody of M.F.

A hearing was held on June 24, 1993. On July 22, 1993, the trial court entered its Decree of Dissolution, awarding wife legal and primary physical custody of M.F. Additionally, the decree established that husband should have temporary physical custody of M.F. at "reasonable times" and for "reasonable intervals". Husband filed a motion requesting the judgment be amended or, in the alternative, a new trial. Said motion was denied on September 14, 1993. This appeal ensued.

Husband raises one point on appeal. He argues the trial court erred in awarding legal custody and primary physical custody of M.F. to wife. He suggests the court failed to adequately consider the best interests of the child.[1]

In support of this argument, husband points to the fact that wife is under the care of Dr. Winston Kitchin, a board certified psychiatrist. Wife has been diagnosed as suffering from manic depressive illness or bipolar disorder. This condition is characterized by mood swings, poor sleep, and manic phases which include irritability, hypersexuality, and spending spurts.

Wife admitted to Dr. Kitchin that in the past, she had thoughts of harming M.F. or herself, including contemplations of suicide. Additionally, wife disclosed to Dr. Kitchin

that, at one point during the marriage, she had sexual relations with three different men on three consecutive nights. Finally, evidence adduced at the hearing established wife had worked at approximately thirteen different jobs since the date of the marriage.

Husband notes wife has been hospitalized three times for her illness and will require treatment for her condition for the rest of her life. Based on these arguments, husband contends custody was inappropriately granted to wife, and the best interests of M.F. dictate custody should be placed with husband.

■ We apply the *Murphy v. Carron* standard of review to requests for modification of custody decrees. *Higgins v. Karger*, 753 S.W.2d 622, 627 (Mo.App.S.D.1988). The "judgment of the trial court will be sustained ... unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing a child custody determination, the action of the trial court is given greater deference than in other cases. *Cornell v. Cornell*, 809 S.W.2d 869, 873 (Mo.App.S.D.1991).

■ Wife points out that she is currently on Lithium, a drug often used to control the erratic behavior depictive of bipolar disorder. Dr. Kitchin indicated wife will require lifelong treatment for her condition but with such treatment, wife's mood should be sufficiently stabilized to prevent the need for future hospitalizations. Dr. Kitchin also stated that from a psychiatric standpoint, he was unaware of anything which would keep wife from providing appropriate care to M.F., and he had observed nothing which would lead him to believe wife posed a danger to M.F.[2]

On cross-examination Dr. Kitchin was asked whether wife's frequent change in jobs was indicative of her lack of stability. Al-

---

1. Husband points specifically to RSMo § 452.-375.2(5) which states: "The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including: ... (5) The mental and physical health of all individuals involved...."

2. Kitchin also noted it was only during her first hospitalization, necessary for treatment of postpartum depression, that Wife suggested she had thoughts and feelings of hurting the baby. It was partially for this reason Wife sought treatment at that time. Wife testified that since recovering from the postpartum depression, she had no thoughts of harming M.F.

though Dr. Kitchin noted "[b]ipolar people are always changing jobs", he did not know whether wife's continual job change was due to her disorder or due to the nature of her work. Kitchin indicated wife worked in cosmetology and from his experience, hairdressers change jobs quite frequently. Wife testified at the time of trial she was working two jobs. She was also enrolled in a program for doctor's assistants and hoped to attend an occupational therapy program at St. Louis Community College.

Additional evidence adduced at trial established that on July 8, 1992, a petition was filed with the Juvenile Division of St. Louis County Circuit Court alleging M.F. had been sexually molested by Jay Flieg, husband's brother and a resident of husband's household. The petition asserted the molestation occurred while M.F. was within the custody of husband. Commissioner Robert Brannon found the allegations to be true and ordered the parents to prevent Jay Flieg from having any contact with the child.

Testimony also suggested that on occasion, husband drank heavily, spanked M.F., and had been physically abusive towards wife. Husband's living quarters had no accommodations for M.F., while wife had a house in which M.F. had his own furnished room.

We find the determination of the trial court to be supported by the substantial weight of the evidence. The trial court is in the best position to assess the credibility of the witnesses and is free to believe or disbelieve all, none, or part of any witness's testimony. *In Re Marriage of Carter*, 862 S.W.2d 461, 465 (Mo.App.S.D.1993). Obviously, the trial court determined wife to be the more credible of the parties, and we see nothing in the record to require us to overturn the court's decision.

Based on the foregoing, the determination of the trial court is affirmed.[3]

REINHARD, P.J., and CRAHAN, J., concur.

---

3. Wife's motion to strike portion of the legal file

---

which was taken with the case is denied.