Meredith E. **WILKINSON, Respondent,**

v.

**Arville E. DECLUE, Jr., Appellant.**

No. 65962.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 17, 1995.

---

Ronald E. Pedigo, Farmington, for appellant.

Gale Anne Todd, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Arville E. DeClue, Jr. ("father"), appeals from an order of the Washington County Circuit Court transferring primary physical custody of his minor child A.W. ("son") to respondent, Meredith E. Wilkinson ("mother"). We reverse and remand with directions that a guardian ad litem be appointed for son.

Son was born out of wedlock to mother and father on September 11, 1990. On May 6, 1993, pursuant to RSMo § 455.505.1 [1], father filed a petition in Washington County Circuit Court under Cause No. CV1093–153DR for an order of child protection. In the petition father alleged mother and/or her live-in boyfriend did the following to son: "burns with cigarette, locks in closet [sic] cusses and hollers at, abuses drugs in [son's] presence." The circuit court issued an ex parte order of child protection pursuant to RSMo § 455.513 [2], placing son in the custody of father.

On May 19, 1993, pursuant to RSMo § 455.516 [3], the circuit court held a hearing. The docket sheet for Cause No. CV1093–153DR shows that both mother and father, as well as a Division of Family Services caseworker, appeared before the court and adduced testimony. The court issued a full order of protection, placing son in the custo-

1. All statutory references are to RSMo Supp. 1993, unless otherwise indicated. RSMo § 455.505.1 states: "An order of protection for a child who has been subject to abuse by a present or former adult household member may be sought ... by the filing of a verified petition alleging such abuse by the respondent."

2. RSMo § 455.513 states: "Upon the filing of a verified petition ..., for good cause shown in the petition, ... the court may immediately issue an ex parte order of protection. An immediate and present danger of abuse to a child shall consti-

tute good cause for purposes of this section. An ex parte order of protection shall be in effect until the time of the hearing."

3. RSMo § 455.516.1 states, "Not later than fifteen days after the filing of a petition ..., a hearing shall be held ... At the hearing, ..., if the petitioner has proved the allegation of abuse of a child by a preponderance of the evidence, the court may issue a full order of protection for a definite period of time, not to exceed one hundred eighty days."

dy of father "until Sept. 22, 1993, or until some court of proper jurisdiction shall have entered appropriate orders of custody."

On July 22, 1993, mother filed a motion under Cause No. CV1093–225DR for custody of son. In the motion, mother alleged the following: she had physical custody of son from the time of his birth until October of 1992; in October of 1992, father received temporary physical custody of son, and subsequently refused to return son to mother; father attempted to prevent mother from maintaining contact with son; and son's best interests dictate that he be in the primary care, custody and control of mother. Summons and process were served upon father on July 27, 1993.

On September 8, 1993, a hearing was held on mother's motion. Father never appeared. Mother took the stand and, when asked, denied that son was ever abused while in her custody. The circuit court entered a default judgment against father, awarding primary care, custody and control of son to mother. Father was granted visitation and temporary custody rights, and was ordered to pay child support.[4]

On September 9, 1993, father filed a motion to set aside the default judgment. Father alleged he would present evidence concerning custody and the best interests of son, "including the fact that the Court should order a home study on the [mother's] residence and the fact that [mother] lives with a man who [sic] the child is afraid of due to physical abuse by the man."

On September 13, 1993, father filed his answer to mother's motion for custody. Father denied mother's allegations that he refused to return child to mother and that he prevented her from maintaining contact with son.

On September 15, 1993, the circuit court held a hearing on father's motion to set aside the default judgment. There was reference to the issue of abuse when father testified that he allowed mother a week of visitation, from September 5 to September 12, 1993, on the condition that son not see or be around mother's boyfriend, asserting, "I didn't want him abused no more."

On September 21, 1993, the circuit court entered an interlocutory order sustaining the default judgment entered against father, pending further orders of the court. On April 12, 1994, new counsel for father filed an entry of appearance; also on April 12 and upon father's request, the interlocutory order was made final for purposes of appeal. This appeal was filed on April 19, 1994.

■ Father raises three points on appeal. We find the first point dispositive. Father contends the circuit court erred as a matter of law in failing to- appoint a guardian ad litem for son, despite father's allegations that son was abused while in mother's custody. We agree.

■ RSMo § 452.423.1 states in pertinent part: "The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged." This statutory duty of appointment is mandatory, not discretionary, and arises whenever abuse is alleged in motions or pleadings. *Osmun v. Osmun*, 842 S.W.2d 932, 935 (Mo.App.E.D. 1992). Even if neither party requests appointment of a guardian ad litem, it is error not to appoint a guardian ad litem where abuse is alleged. *Id.* This duty applies to all proceedings for child custody, dissolution of marriage, or legal separation. *State ex rel. Scott v. Goeke*, 864 S.W.2d 411, 414 (Mo. App.E.D.1993). The best interests of the child are always paramount in cases of this nature, and it is the duty of the guardian ad litem to protect those interests. *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 385 (Mo. App.E.D.1993).

Here, father's allegations that son was abused while in mother's custody have been the focal point of this custody battle since May 6, 1993, when father alleged in his petition for an order of child protection that son was, among other things, burned by cigarettes and locked in the closet. Father reiterated his allegations of abuse in his motion to set aside the default judgment, claiming that son was afraid of mother's boyfriend "due to physical abuse by the man." Fur-

---

4. Child support was later determined to be $150 per month.

ther—although we realize that the Supreme Court has held such evidence, by itself, as insufficient to mandate appointment of a guardian ad litem, *Rombach v. Rombach,* 867 S.W.2d 500, 503 (Mo.banc 1993)—father also testified, at the hearing on his motion to set aside the default judgment, to his belief that mother's boyfriend abused son.

"[RSMo § ] 452.423.1 exemplifies the interest of the state in protecting the interests of a child in any proceeding where an allegation of child abuse or neglect is made." *Ramage v. Ramage,* 792 S.W.2d 432, 434 (Mo.App.S.D.1990). To that end, the statute unambiguously mandates that courts appoint guardians ad litem when abuse is alleged in child custody proceedings, even if neither party requests it. *Osmun,* 842 S.W.2d at 935. Failure to do so constitutes error. *Id.* In this case, the circuit court erred in failing to appoint a guardian ad litem for son when apprised of father's allegations of abuse.

Accordingly, we reverse the order of the circuit court granting custody of son to mother, and remand for a new custody hearing, with orders that a guardian ad litem for son be appointed to perform his or her duties as described in RSMo § 452.423.[5]

REINHARD, P.J., and CRAHAN, J., concur.

---

5. Due to the dispositive nature of father's first point of appeal, we need not address the other two points.